

**SO ORDERED.**

**SIGNED April 1, 2014.**

ROBERT SUMMERHAYS
UNITED STATES BANKRUPTCY JUDGE

_____

## UNITED STATES BANKRUPTCY COURT
### WESTERN DISTRICT OF LOUISIANA

IN RE:

GULF FLEET HOLDINGS, INC., ET AL    CASE NO. 10-50713

    Debtors                Chapter 11

                                  (Jointly Administered w/Case
                                  Nos. 10-50714, 10-50715,
                                  10-50716, 10-50717, 10-50718,
                                  10-50719, 10-50720, 10-50721,
                                  10-50722, 10-50723, 10-5042)

-----------------------------------------------------------------

ALAN H. GOODMAN, TRUSTEE,

    Plaintiff-in-Intervention

VERSUS                            ADVERSARY NO. 11-05006

H.I.G. CAPITAL, LLC, H.I.G.,
GULF FLEET ACQUISITION, LLC,
H.I.G. GP-II, INC., H.I.G.
CAPITAL PARTNERS IV, L.P., H.I.G.
ADVISORS IV, L.L.C., GULF FLEET
TIGER ACQUISITION, LLC, GULF
FLEET TIGER HOLDINGS, INC.,

**ANTHONY TAMER, JEFF ZANARINI,**
**JONATHAN FOX, AND STEADFAST**
**INSURANCE COMPANY,**

    **Defendants-in-Intervention**

---

### REPORT AND RECOMMENDATION

---

The present matter before this court is a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure (the "Second Motion to Dismiss") filed by defendants H.I.G. Capital, LLC, H.I.G. Gulf Fleet Acquisition, L.L.C., H.I.G. GP-II, Inc., H.I.G. Capital Partners IV, L.P., H.I.G. Advisors IV, L.L.C., Gulf Fleet Tiger Acquisition, LLC, and Gulf Fleet Tiger Holdings, Inc. (the "H.I.G. Capital Defendants"), and Anthony Tamer, Jeff Zanarini, and Jonathan Fox (the "D&O Defendants" and, with the H.I.G. Defendants, the "Moving Defendants"). The Moving Defendants request dismissal of the Second Amended Complaint in Intervention (the "Amended Complaint") filed by Allan Goodman, the Trustee of the Gulf Fleet Liquidating Trust (the "Trustee"). H.I.G. Capital is the former owner of a majority interest in Gulf Fleet Holdings, Inc., and Messrs. Zanarini, Tamer, and Fox are employees of H.I.G. Capital who were appointed as directors and/or officers of Gulf Fleet Holdings and its subsidiaries. The court previously granted in part and denied in part the Rule 12(b)(6) motions to dismiss

filed by the Moving Defendants with respect to the Trustee's First Amended Complaint (the "Complaint") in <u>Goodman v. H.I.G. Capital, LLC, et al.</u>, No. 11-05006, Dkt. No. 111 (Bankr. W.D. La. April 1, 2013)(hereinafter <u>Gulf Fleet I</u>).  The court granted leave to replead the dismissed claims. Under <u>Stern v. Marshall</u>, the court is precluded from entering a final order on the Trustee's state law and federal fraudulent transfer claims, and, under recent Fifth Circuit precedent, cannot overcome this lack of authority by obtaining the parties' consent.  Accordingly, the Bankruptcy Court respectfully submits this Report and Recommendation to the U.S. District Court for the Western District of Louisiana, and recommends entry of an order GRANTING IN PART and DENYING IN PART the Moving Defendants' Motion to Dismiss under Rule 12(b)(6) as set forth below.

### JURISDICTION AND AUTHORITY TO ENTER FINAL ORDERS

The Trustee's complaint asserts both federal and state law causes of action.  The Trustee asserts fraudulent transfer and preference claims under 11 U.S.C. §§ 547 and 548. These federal bankruptcy causes of action are defined as "core" claims under 28 U.S.C. Section 547(b)(2).  All but one of the Trustee's claims raise problems with respect to the bankruptcy court's authority to enter final orders under <u>Stern v. Marshall</u>, __U.S.__, 131 S.Ct. 2594 (2011).  A majority of courts have held that a bankruptcy

-3-

court may enter final orders on preference claims under section
547. See First Choice Drywall, Inc. v. Presbyter (In re First
Choice Drywall, Inc.), 2012 WL 4471570 (Bank. N.D. Ill. Sept. 25,
2012)(bankruptcy court has the power to determine preference
actions after Stern ); Olsen v. PG Design/Build, Inc. (In re
Shelter Plumbing SYS., Inc.), 2011 WL 6176213 (Bank. N.D. Ill. Dec.
12, 2011)(same); Nanodynamics, Inc. v. Rothstein (In re
Nanodynamics, Inc.), 474 B.R. 422, 429 (Bank. W.D.N.Y. 2012)
(same); In re Am. Hous. Found., 469 B.R. 257, 265 (Bank. N.D. Tex.
2012) (same); In re DBSI, Inc., 467 B.R. 767, 773 (Bank. D. Del.
2012) (same).  Although fraudulent transfer claims under section
548 are statutorily core claims, most courts have held that a
bankruptcy court does not have authority to enter final orders on
these claims under Stern.  See, e.g., In re Bellingham Ins. Agency,
Inc., 702 F.3d 553, 565 (9th Cir. 2012).  The Trustee's remaining
state law claims are undisputably non-core matters under section
157(b).  The parties, however, have consented to the court entering
a final order with respect to the present motions. (See Gulf Fleet
I, Dkt. Nos. 135 and 136).  Until recently, many courts have held
that a bankruptcy court could enter final orders on a core matter
subject to Stern's prohibition if the parties expressly consented.
See, e.g., In re Global Aviation Holdings, Inc., 496 B.R. 284, 287
(E.D.N.Y. 2013); In re Bellingham, 702 F.3d at 572.  With respect

-4-

to non-core claims, a bankruptcy court may enter final orders with the consent of the parties under section 157(c)(2).  On November 11, 2013, the Fifth Circuit ruled that bankruptcy courts cannot issue final orders in matters subject to <u>Stern</u> even with consent of the parties.  <u>In re BP RE, L.P.</u>, 735 F.3d 279 (5th Cir. 2013).  The court denied rehearing on February 28, 2014.  The question of consent under <u>Stern</u> is also currently before the U.S. Supreme Court.  The Supreme Court granted certiorari in the <u>Bellingham</u> case and heard oral arguments in January 2014.  The Court, however, has not issued an opinion in the <u>Bellingham</u> case.  In light of the Fifth Circuit's <u>BP RE</u> case, the court submits the present Report and Recommendation containing the court's proposed conclusions with respect to the Second Motion to Dismiss.[1]

## BACKGROUND

Prior to bankruptcy, Gulf Fleet owned and operated a fleet of supply vessels used to support oil and gas exploration and production companies in the Gulf of Mexico and other locations. (Trustee's Second Amended Complaint ("Am. Compl.") at ¶ 40).  Gulf Fleet was formed in 1999 by Michael and Darlene Hillman.  (<u>Id</u>.).

---

[1]The Supreme Court is also considering a bankruptcy court's statutory authority to enter proposed findings and conclusions under 28 U.S.C. Section 157(c)(1) in matters that are statutorily defined as core but which fall within <u>Stern</u>'s holding that bankruptcy courts lack constitutional authority to enter final orders.

H.I.G. Capital, LLC is a private investment firm with its principle place of business in Miami, Florida. (Id. at ¶ 11). H.I.G. Capital operates through various subsidiaries and affiliates, including defendants H.I.G. Gulf Fleet Acquisition, LLC, H.I.G. GP-II, H.I.G. Capital Partners IV, L.P., H.I.G. Advisors IV, L.L.C., Gulf Fleet Tiger Holdings, Inc., and Gulf Fleet Tiger Acquisition, LLC. (Am. Compl. at ¶¶ 10-21). In May 2007, the Hillmans and H.I.G. entered into a leveraged buyout transaction (the "LBO"). The Hillmans sold all of their ownership interest in Gulf Fleet to H.I.G. in exchange for $23.5 million in cash and a 35% equity interest in the new Gulf Fleet entity created as a result of the buyout. (Id. at ¶ 42). As a result of the LBO, H.I.G. held a 65% controlling interest in Gulf Fleet. (Id.). According to the Trustee, H.I.G. Gulf Fleet Acquisition, LLC, ("Gulf Fleet Acquisition") was a shell Delaware LLC and indirectly wholly-owned subsidiary of H.I.G. Capital that was formed in connection with the LBO to hold the stock of Gulf Fleet Holdings. (Id. at ¶¶ 38, 44). After the LBO, Gulf Fleet Holdings, Inc. had three direct subsidiaries: Gulf Fleet Offshore, LLC ("GFO"), Gulf Ocean Marine Services, LLC ("GOMS"), and Gulf Fleet Management, LLC. GOMS, in turn, was the parent company for seven subsidiaries, including Gulf Fleet, LLC, Hercules Marine, LLC, Gulf Worker, LLC, Gulf Service, LLC, Gulf Wind, LLC, Star Marine, LLC, and Gulf Fleet Marine, Inc.

-6-

(Id. at ¶ 39).

The LBO was funded by a loan underwritten by a syndicate of banks led by Comerica Bank.  This senior loan was secured by Gulf Fleet's property and certain accounts receivable.  The senior loan included a term loan of $42 million and a revolving credit commitment of $10 million.  (Id. at ¶¶ 44-50).  The Trustee alleges that Gulf Fleet received the full $42 million term debt and drew approximately $4 million under the revolving credit commitment at the time the LBO was closed on May 1, 2007.  The Trustee further alleges that Brightpoint Capital Partners Master Fund, L.P. ("Brightpoint") extended Gulf Fleet an additional $6 million subordinated loan with a maturity date of May 1, 2012.  According to the Trustee, the proceeds of these loans were used to pay Gulf Fleet's pre-LBO debt and to fund the $23.5 million cash paid to the Hillmans.  (Id.).  The Trustee further alleges that, out of the loan proceeds, Gulf Fleet ultimately retained $500,000 cash.  (Id. at 50).

The Trustee contends that, after the LBO, H.I.G. "dominated and controlled" Gulf Fleet.  Specifically, H.I.G. employees - including defendants Jeff Zanarini, Jonathon Fox, and Anthony Tamer - were appointed as officers and directors of Gulf Fleet Holdings and Gulf Fleet's subsidiaries.  (Id. at ¶¶ 54-55).  The Trustee contends that these H.I.G. employees prevented Michael Hillman from

-7-

attending board meetings and withheld information from Mr. Hillman. (Complaint at ¶ 24).  The Trustee also alleges that H.I.G. Capital and its employees managed Gulf Fleet so as to benefit H.I.G. at the expense of Gulf Fleet Holdings, Gulf Fleet Holding's subsidiaries, their minority shareholders, and their creditors.

The Trustee alleges that H.I.G. required Gulf Fleet to enter into a Professional Services Agreement ("PSA") and Consulting Services Agreement ("CSA").  (Id. at ¶¶ 86-88).  These agreements provided that H.I.G. Capital would provide professional advice and assist in evaluating potential acquisitions in exchange for an annual management fee of $500,000 as well as other fees set forth in the agreements.  (Id.).  According to the Trustee, the services provided under these agreements "were of little or no value to Gulf Fleet."  (Id. at ¶ 88).  The Trustee alleges that the agreements "provided an effective mechanism for stripping value from Gulf Fleet."  (Id.).

The Complaint also addresses the sale of Gulf Fleet's interests in the construction contract for the *M/V Gulf Tiger.* Gulf Fleet contracted with Thoma-Sea Shipbuilders, LLC to construct the *M/V Gulf Tiger* in July 2007.  The cost of the contract was approximately $17.975 million, and Gulf Fleet paid $4 million as a deposit for the vessel.  (Id. at ¶ 90).  Gulf Fleet assigned its rights to the *M/V Gulf Tiger* construction contract to an H.I.G.

-8-

subsidiary, GF Tiger Acquisition, in July 2008.  According to the Trustee, GF Tiger Acquisition paid Gulf Fleet $8 million for the contract.  (Id. at ¶ 91).  After the assignment, H.I.G.'s representatives at Gulf Fleet required Gulf Fleet to continue supporting the construction of the *M/V Gulf Tiger* even though Gulf Fleet no longer had an interest in the contract.  (Id.).  According to the Trustee, defendants Zanarini and Fox assured the Chief Financial Officer of Gulf Fleet that H.I.G. Capital would reimburse Gulf Fleet for the expenditures, but no reimbursements were ever made.  (Id at ¶¶ 93-94).  The Trustee further alleges that the D&O Defendants voted to approve the transaction (Id. at ¶ 92).  According to the Trustee, Gulf Fleet provided over $1 million in equipment, materials, and labor in connection with the construction of the *M/V Gulf Tiger* solely for the benefit of GF Tiger Acquisition and H.I.G.  (Id. at ¶ 94).  The Trustee contends that H.I.G. refused to reimburse these expenses even after Gulf Fleet made a demand for payment.  (Id. at ¶ 95).

After the LBO, Gulf Fleet entered into a factoring agreement with GF Financing (the "Factoring Agreement"), an H.I.G. subsidiary.  (Id. at ¶¶ 99-100).  Under the terms of the agreement, GF Financing could purchase up to $4 million in accounts receivable from Gulf Fleet.  (Id.).  The Trustee alleges that Gulf Fleet assigned $2,897,400 in accounts receivable to GF Financing in

-9-

November 2009.  (<u>Id</u>.).  The Trustee further alleges that this agreement and assignment of accounts receivable violated the covenants of the senior loan with Comerica Bank, and that Comerica Bank demanded the return of the collateral when it learned of the assignment.  (<u>Id</u>. at ¶ 103).  As a result, Gulf Fleet and GF Financing restructured the Factoring Agreement to cover only "ineligible accounts" as defined in the documents governing the senior loan by Comerica.  The Trustee contends that the purpose of the Factoring Agreement was to provide liquidity for Gulf Fleet without requiring H.I.G. Capital to risk a capital contribution. (<u>Id</u>. at ¶¶ 104-108).

The Trustee alleges that H.I.G. Capital undercapitalized Gulf Fleet by refusing to inject new capital into the company and its subsidiaries.  Instead, according to the Trustee, H.I.G. Capital attempted to fund Gulf Fleet's short-term cash needs through the Factoring Agreement and short-term promissory notes issued by H.I.G.'s affiliates.  For example, in January 2010, Gulf Fleet issued two promissory notes to GF Financing for $5.5 million and approximately $2.9 million.  (<u>Id</u>. at ¶¶ 109-117).  According to the Trustee, the $2.9 million note was intended to replace Gulf Fleet's obligations under the amended Factoring Agreement for the accounts receivable that had to be returned to cure the breach of the covenants in the senior loan documents.  (<u>Id</u>. at ¶¶ 104-108).

-10-

According to the Trustee, Gulf Fleet had no obligation to enter into the promissory note because the assignment of the accounts receivable was without recourse.  (Id.).  The Trustee further points to the terms of the promissory notes, which gave GF Financing the right to convert the balance of the notes into stock for $10 per share at any time before maturity.  (Id. at ¶¶ 113-116).  The Trustee characterizes these notes as "an abusive investment vehicle" because if Gulf Fleet succeeded "the notes would become an equity contribution and H.I.G. Capital would own nearly all of Gulf Fleet," but if Gulf Fleet failed "H.I.G. Capital would claim the notes were debt."  (Id. at ¶ 115).  The Trustee also alleges that H.I.G. intended to undercapitalize Gulf Fleet and to take actions that solely benefitted H.I.G. Capital's interests at the expense of Gulf Fleet Holdings, Gulf Fleet's subsidiaries, and their creditors.  Specifically, the Trustee alleges:

- H.I.G. Capital and its representatives on Gulf Fleet's board of directors effectively excluded Michael Hillman from key board meetings; (Id. at ¶¶ 60-61).

- H.I.G. Capital caused Gulf Fleet to file its bankruptcy petition in Louisiana and delayed the filing to shield the LBO transactions and transfers in connection with the LBO from liability under federal and state avoidance statutes; (Id. at ¶¶ 121-132).

- H.I.G. caused Gulf Fleet Acquisition to merge with GOMS to "avoid liability for abusing the corporate form and incurring inter-company receivables owed by GF Acquisition to one or more of the Debtors"; (Id. at ¶ 97).

-11-

- after the LBO, Gulf Fleet Holdings and its subsidiaries were insolvent because their asset values were worth less than what was reflected on Gulf Fleet's books; (Id. at ¶¶ 70-74).

Gulf Fleet and its affiliated entities filed for relief under Chapter 11 of the Bankruptcy Code on May 14, 2010.  The court ultimately confirmed a liquidating plan of reorganization for the substantively consolidated Gulf Fleet entities after an evidentiary hearing on April 26, 2011.  The confirmed plan provided for the creation of the Trust and Mr. Goodman was ultimately appointed Trustee.  The confirmed plan assigned certain causes of action to the Trust.  The present action was initially commenced by Michael Hillman.  The Trustee subsequently intervened as plaintiff.

In the first round of motions to dismiss, the H.I.G. Capital Defendants and the D&O Defendants (Zanarini, Fox, and Tamer) filed a motion to dismiss the complaint under Rule 12(b)(6).  Another defendant, Brightpoint Capital filed a separate motion to dismiss and a motion for more definite statement  under Rule 12(e).  The Trustee's original complaint asserted fourteen causes of action. The court granted the H.I.G. Capital Defendants' first motion to dismiss (the "First Motion to Dismiss:) in part and denied the motion in part, and granted Brightpoint's motion in its entirety. The court's ruling on this first round of motions disposed of the Trustee's claims as follows:

- **Count 1:   Fraudulent transfer**--the motion to dismiss was

-12-

granted in part and denied in part;

- **Counts 2 and 3:  Recharacterization and simulation**--the motion to dismiss was granted;

- **Count 4:  Subordination**--the motion to dismiss was denied;

- **Counts 5 and 6:  Breach of fiduciary duty**--the motion to dismiss was granted;

- **Count 7:  Aiding and abetting breach of fiduciary duty**--the motions to dismiss were granted;

- **Count 8:  Conversion**--the motion to dismiss was granted;

- **Counts 9 and 10:  Unjust enrichment and quantum meruit**--the court granted the motion to dismiss with respect to these claims in part and denied the motion in part;

- **Count 12:  Single business enterprise**--the court granted the motion to dismiss; and

- **Count 11:   Partnership liability**--motion to dismiss was granted.

The court granted the Trustee leave to replead the dismissed causes

of action.  The Trustee then filed the Amended Complaint asserting

the following twenty causes of action:

- **Count 1:  Breach of Fiduciary Duty for Delaying Bankruptcy** (by GFH and the GFH Subsidiaries against Zanarini, Fox and Tamer);

- **Count 2:  Breach of Fiduciary Duty for Delaying Bankruptcy** (by GFH and the GFH Subsidiaries against HIG Capital, HIG-GFA, HIG-GPII, HIG Capital Partners, HIG Advisors, and Unknown HIG Entities);

- **Count 3:  Fraudulent Transfer/Revocatory Action for Payments to Thoma-Sea to Complete the *M/V Gulf Tiger*** (by GFH and the GFH Subsidiaries against GF Tiger Acquisition);

- **Count 4:  Breach of Fiduciary Duty for Payments to Thoma-Sea to Complete the *M/V Gulf Tiger*** (by GFH and the GFH

-13-

Subsidiaries against Zanarini, Fox and Tamer);

- **Count 5:  Breach of Fiduciary Duty for Payments to Thoma-Sea to Complete the *M/V Gulf Tiger*** (by GFH and the GFH Subsidiaries against HIG Capital, HIG-GFA, HIG-GPII, HIG Capital Partners, HIG Advisors, and Unknown HIG Entities);

- **Count 6:  Breach of Fiduciary Duty for Money Earned by GFH Subsidiaries Spent on GFH Projects** (by the GFH Subsidiaries against Zanarini, Fox and Tamer);

- **Count 7:  Breach of Fiduciary Duty for Interest Paid on the Sun Notes** (by GFH and the GFH Subsidiaries against Zanarini, Fox and Tamer);

- **Count 8:  Breach of Fiduciary Duty for Interest Paid on the Sun Notes** (by GFH and the GFH Subsidiaries against HIG Capital, HIG-GFA, HIG-GPII, HIG Capital Partners, HIG Advisors, and Unknown HIG Entities);

- **Count 9:  Fraudulent Transfers/Revocatory Action to Recover CSA Payments** (by the GFH Subsidiaries (other than GOMS) against HIG Capital;

- **Count 10:  Voidable Preference to Recover CSA Payments** (by GOMS against HIG Capital);

- **Count 11:  Fraudulent Transfer for the $2.9M Note and $5.5M Note** (by the GFH Subsidiaries against GF Financing);

- **Count 12:  Breach of Fiduciary Duty for $2.9M Note and $5.5M Note** (by the GFH Subsidiaries against Zanarini, Fox and Tamer);

- **Count 13:  Breach of Fiduciary Duty for $2.9M Note and $5.5M Note** (by GFH Subsidiaries against HIG Capital, HIG-FGA, HIG-GPH, HIG Capital Partners, HIG Advisors, GF Financing and Unknown Entities);

- **Count 14:  Breach of Fiduciary Duty - Actions of Zanarini, Fox and Tamer**

- **Count 15:  Alternative Claim for Aiding and Abetting Against HIG Affiliates if Fiduciary Duties Were Not Owned Directly;**

-14-

- **Count 16:  Equitable Subordination of the $2.9M Note, the $5.5M Note, and the CSA Claim** (by GFH and the GFH Subsidiaries against HIG Capital and GF Financing);

- **Count 17: Simulation** (by GFH and the GFH Subsidiaries against GF Financing);

- **Count 18: Unjust Enrichment** (by GFH and the FPH Subsidiaries against HIG Capital and GF Tiger Acquisition);

- **Count 19:  Quantum Meruit** (by GFH and the GFH Subsidiaries against GF Tiger Acquisition); and

- **Count 20:  Direct Action Against Steadfast** (Insurance).

Although the Amended Complaint does not re-assert the Trustee's alter ego/single business enterprise claims and fraudulent transfer claims under Delaware law, the Trustee reserves these dismissed claims for appeal.  (Am. Compl. at ¶¶ 217-219).  The Amended Complaint no longer alleges claims against Brightpoint.

## DISCUSSION

### I.  Motions to Dismiss Under Rule 12(b)(6) – The Applicable Standards.

Rule 7012(b) of the Federal Rules of Bankruptcy Procedure provides that Rule 12(b)(6) of the Federal Rules of Civil Procedure applies in adversary proceedings.  Rule 12(b)(6) allows dismissal if a plaintiff fails "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).  Rule 12(b)(6) must be read in conjunction with Rule 8(a), which requires "a short and plain statement of the claim showing that the pleader is entitled to

-15-

relief." Fed. R. Civ. P. 8(a)(2). Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007); Ashcroft v. Iqbal, __ U.S. __, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). To withstand a Rule 12(b)(6) motion, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570; see also Elsensohn v. St. Tammany Parish Sheriff's Office, 530 F.3d 368, 372 (5th Cir. 2008) (quoting Twombly, 550 U.S. 544, 127 S.Ct. at 1974, 167 L.Ed.2d 929). A claim satisfies the plausibility test "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. Twombly's plausibility standard is "not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Iqbal, 129 S.Ct. at 1949(internal citations omitted). While a complaint need not contain detailed factual allegations, it must set forth "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555 (citation omitted). The "[f]actual allegations of [a complaint] must be enough to raise a right to relief above the speculative level ... on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Id. (quotation marks, citations, and footnote omitted). In reviewing a Rule 12(b)(6) motion, the

-16-

court must accept all well-pleaded facts in the complaint as true and view them in the light most favorable to the plaintiff. Sonnier v. State Farm Mutual Auto. Ins. Co., 509 F.3d 673, 675 (5th Cir. 2007); Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit, 369 F.3d 464, 467 (5th Cir. 2004); Baker v. Putnal, 75 F.3d 190, 196 (5th Cir. 1996). In ruling on such a motion, the court cannot look beyond the pleadings. Spivey v. Robertson, 197 F.3d 772, 774 (5th Cir. 1999), cert. denied, 530 U.S. 1229, 120 S.Ct. 2659, 147 L.Ed.2d 274 (2000).  The pleadings include the complaint and any documents attached to it. Collins v. Morgan Stanley Dean Witter, 224 F.3d 496, 498-99 (5th Cir. 2000).  The court may also consider documents that are attached to the motion to dismiss if the documents are specifically referenced in the complaint and are "central" to the plaintiff's claim. Sullivan v. Leor Energy, LLC, 600 F.3d 542, 546 (5th Cir. 2010).

Rule 9(b) of the Federal Rules of Civil Procedure imposes additional requirements for pleading claims of fraud.  Rule 9(b) requires the plaintiff to plead the circumstances constituting fraud with particularity.  See Fed R. Civ. P. 9(b); Tuchman v. DSC Communications Corp., 14 F.3d 1061, 1068 (5th Cir. 1994).  To satisfy Rule 9(b), a plaintiff must allege the identity of the person making a fraudulent statement, the time, place and content of the misrepresentation, the resulting injury, and the method by

-17-

which the misrepresentation was communicated.  <u>Tuchman</u>, 14 F.3d at 1061.  This standard requires sufficient factual detail to lend some measure of substantiation to a claim that the defendant committed fraud.  <u>Id</u>.  Rule 9(b) applies not only to fraud claims, but also to "non-fraud" claims that are based upon allegations of fraud.  For example, a breach of fiduciary duty claim is not generally subject to Rule 9(b).  However, if a breach of fiduciary duty claim is grounded in whole or in part on allegations of fraud, the allegations of fraud must comply with Rule 9(b).  Similarly, fraudulent transfer claims based on allegations of actual fraud are subject to the pleading standards of Rule 9(b).

**II.  The Trustee's Claims.**

> **A.  Counts 1 and 2:  Claims Based on the Venue of Delay in the Bankruptcy Filing.**

In Counts 1 and 2, the Trustee alleges that the H.I.G. Capital Defendants and the D&O Defendants breached their fiduciary duties to Gulf Fleet Holdings and its subsidiaries by delaying the Gulf Fleet's bankruptcy filing and by failing to file the bankruptcy in Delaware instead of Louisiana.  According to the Trustee, the delay "prevented GFH and GFH Subsidiaries from challenging the LBO, including *inter alia* millions of dollars of transaction costs and 'deal fees,' the CSA and PSA, the transfer of $23 million to Mike Hillman, and the security interest granted to Comerica and

-18-

Brightpoint."  (Am. Compl. at ¶ 135).  The Trustee bases this allegation on the fact that Delaware "has a four year 'look back' on fraudulent transfers and tolls limitation for breaches of fiduciary duties when there is adverse domination."  (Id. at ¶ 134).  The Trustee argues that the timing of the filing precluded any challenge to the 2007 leveraged buyout transaction and that Zanarini, Fox, and Tamer knew that a bankruptcy filing "would subject their employer and ultimate benefactor, HIG Capital, to litigation related to the LBO."  (Id.).  These officers and directors therefore "took steps to shield HIG Capital from liability" by filing in Louisiana and by delaying the filing. (Id.).

    The allegations in Counts 1 and 2 of the Second Amended Complaint fail to state a plausible fiduciary duty claim for at least two reasons.  First, purely as a matter of choice of law, a filing in Delaware would not have altered the law applicable to the Trustee's fraudulent transfer and fiduciary duty claims.  In Gulf Fleet I, the court concluded that a federal common law choice-of-law rule should apply to the Trustee's section 544 claims because, even though these claims contain state law as an element, the claims implicate important federal policy in that the purpose of section 544(b) and other federal avoidance claims "is to prevent debtors from illegitimately disposing of property that should be

available to their creditors." In re Cyrus II Partnership, 413
B.R. 609, 614 (Bank. S.D. Tex. 2008); see also In re Best Products
Co., Inc., 168 B.R. 35, 51 (Bank. S.D.N.Y. 1994), aff'd, 68 F.3d 26
(2nd Cir. 1995).  Accordingly, the venue of the bankruptcy case--
whether Delaware or Louisiana--would have resulted in the same
conclusion as far as the underlying non-bankruptcy law applicable
to the Trustee's section 544 claims.  Even if the choice-of-law
rules of the forum state control, the Trustee's allegations do not
show that the outcome would be any different if the Gulf Fleet
entities had filed bankruptcy in Delaware.  Specifically, Delaware
courts would look to the location of the transactions and the
location of the parties in determining the law applicable to a
state fraudulent conveyance claim.  See, e.g., Harbinger Capital
Partners Master Fund I, Ltd. v. Granite Broadcasting Corp., 906 A2d
218, 223 (Del. Ch. 2006).  Here, the fraudulent transfers at issue
were centered in Louisiana and involved the property of Louisiana-
based entities.  With respect to the Trustee's fiduciary duty
claims, choice of law is governed by the state of incorporation and
would not be altered by the choice of venue.  See, e.g., Sagarra
Inversiones, S.L. v. Cementos Portland Valderrivas, S.A., 34A3d
1074, 1082 (Del. Supr. 2011).

    Second, the Trustee has not pled facts stating a plausible
claim that the H.I.G. Capital Defendants or the D&O Defendants

-20-

violated their fiduciary duties by filing for relief on May 14, 2010, instead of filing on an earlier date.  A corporate board's decision to file for bankruptcy and the timing of that decision are generally not sufficient grounds to support a fiduciary duty claim absent allegations of fact showing that the directors failed to exercise due care in making the decision.  See, e.g., In re Fedders North America, Inc., 405 B.R. 527, 542 (Bank. D. Del. 2009) (denying fiduciary duty claim based on the decision to file for bankruptcy); Odyssey Partners, L.P. v. Fleming Companies, Inc., 735 A.2d 386, 416-20 (De. Ch. 1999) (same).  Here, the Trustee's own allegations show that Gulf Fleet Holdings retained its first bankruptcy counsel (White & Case) in October 2009 and that a bankruptcy filing was discussed and authorized at a January 11, 2010 meeting of Gulf Fleet Holdings' Board of Directors.  (Am. Compl. at ¶¶ 121-124).  The Trustee's allegations also show that White & Case prepared schedules and draft pleadings from November 2009 through the January 11th board meeting to lay the groundwork for a bankruptcy filing in Delaware with the oversight of Gulf Fleet's CFO and Messrs. Zanarini, Tamer, and Fox. (Id. at ¶¶ 121-122).  These facts suggest that the directors of Gulf Fleet Holdings discharged their duty to make a fully informed decision about a bankruptcy filing. See Odyssey Partners, L.P., 735 A.2d at 419-20.  Moreover, according to the Trustee's allegations, the $5.5

-21-

million GF Financing Note was also discussed at the January 11th
board meeting.  The Trustee alleges that Gulf Fleet experienced a
"cash flow crisis" in December 2009 and suggests that the $5.5 note
was necessary to inject additional cash into Gulf Fleet Holdings
and its subsidiaries to address the demands of trade creditors and
Comerica, Gulf Fleet's largest secured creditor.  (Am. Compl. at ¶¶
109-111).  The Trustee alleges that this cash infusion allowed Gulf
Fleet to delay its bankruptcy filing.  However, these allegations
are more consistent with an effort to stabilize Gulf Fleet and
possibly avoid an immediate bankruptcy filing that might have
further undermined the prospects of a successful reorganization.
This highlights the  core problem with Counts 1 and 2:  the lack of
any facts supporting the Trustee's ultimate conclusion that the
timing of the bankruptcy filing was the result of a scheme by the
defendants to insulate the 2007 leveraged buyout transaction
despite the Trustee's ability to plead detailed facts pertaining to
the White & Case engagement and the January 11th board meeting.  In
sum, conclusory allegations that the timing and venue of the filing
was part of a scheme to benefit H.I.G. Capital at the expense of
Gulf Fleet's creditors does not state a plausible claim for relief.
Accordingly, the court recommends that the Second Motion to Dismiss
be granted with respect to Counts 1 and 2.

   **B.  The Trustee's Fraudulent Transfer, Preference and
       Revocatory Claims**

11 U.S.C. § 548(a)(1) allows a trustee to avoid any transfer of the debtor's interest in property if the transfer was the result of actual or constructive fraud.  Section 548(a)(1)(A) governs "actual" fraud and allows a trustee to avoid a transfer made "with actual intent to hinder, delay, or defraud any entity to which the debtor was or became...indebted."  Section 548(a)(1)(B) in turn, governs "constructive" fraud and requires proof that (1) the debtor had an interest in property; (2) a transfer of that interest occurred within two years of the bankruptcy filing; (3) the debtor was insolvent at the time of the transfer or became insolvent as a result of the transfer; and (4) the transfer resulted in no value for the debtor or the value received was not "reasonably equivalent" to the value of the transferred property interest.  11 U.S.C. § 548(a)(1)(B); BFT v. Resolution Trust Corp., 511 U.S. 531, 535 (1994).  With respect to both actual and constructive fraud, a trustee cannot challenge transfers that occurred more than two years before the filing of the bankruptcy petition even if all of the other elements of a fraudulent transfer claim are satisfied. 11 U.S.C. § 550(a) outlines the Trustee's remedies.  Section 550(a) provides that a trustee "may recover, for the benefit of the estate, the property transferred, or, if the court so orders, the value of such property, from (1) the initial transferee of such transfer or the entity for whose benefit such transfer was made; or

-23-

(2) any immediate or mediate transferee of such initial transferee." 11 U.S.C. § 550(a).

Under 11 U.S.C. § 544(b), a trustee succeeds to the rights of an unsecured creditor to avoid a transaction under non-bankruptcy law. See In re Moore, 608 F.3d 253, 260 (5th Cir. 2010). In other words, if "an actual, unsecured creditor can, on the date of the bankruptcy, reach property that the debtor has transferred to a third party, the trustee may use section 544(b) to step into the shoes of that creditor and 'avoid' the debtor's transfer." Id. The Trustee's rights under section 544 arise under federal law, but the scope of the rights are defined by non-bankruptcy law. Id.; In re Cyrus II Partnership, 413 B.R. 609, 614 (Bank. S.D. Tex. 2008) (describing section 544(b) claims as "unique because they exist only to the extent of applicable state law," but the claims "are federal causes of action rooted in federal bankruptcy law and policy").

Since the scope of the Trustee's section 544 claim is defined by state law, the court performed a choice of law analysis with respect to the law applicable to those claims.  Without fully duplicating the court's analysis from Gulf Fleet I, the court ruled that Louisiana law on revocatory actions defines the scope of the Trustee's claims under section 544(b).  (Gulf Fleet I at 16-22). The Trustee had argued for the application of Delaware law on the

-24-

grounds that Gulf Fleet Holdings was formed under Delaware law and some of Gulf Fleet's subsidiaries were Delaware LLC's.  This distinction is important because the "reach back" period of the relevant Delaware and Louisiana statutes differ.  The Delaware provisions relied upon by the Trustee allow creditors to avoid transactions occurring up to four years prior to the filing of a bankruptcy case.  Del. Stat. Ann. Title VI, § 1309.  In contrast, a Louisiana revocatory action allows avoidance of transfers occurring up to three years prior to the bankruptcy filing.  La. Civ. Code Art. 2041.  Some of the transfers challenged by the Trustee in the prior Complaint fell outside of the three-year reach back period of a Louisiana revocatory action.

>    1.  **Count 3:  The *M/V Tiger***

In Count 3, the Trustee restates his fraudulent transfer claims under sections 548 and 544 with respect to the *M/V Gulf Tiger*.  Specifically, the Trustee contends that GF Tiger Acquisition and H.I.G. Capital required Gulf Fleet Holdings and its subsidiaries to contribute equipment, funds, materials, and labor for the construction of the *M/V Gulf Tiger* even though Gulf Fleet Holdings had no ownership interest in the contract and no contractual obligation to fund the vessel's construction.  In Gulf Fleet I, the court concluded that these allegations were sufficient to state a claim under 11 U.S.C. §§ 548 and 544 based on the

-25-

allegations that Gulf Fleet Holdings and its subsidiaries did not receive reasonably equivalent value for the transfers and that they were insolvent at the time of the transfers. (Gulf Fleet I at 30-32). For the same reasons, the court concludes that Count 3 adequately pleads a fraudulent transfer and revocatory actions claims. Accordingly, the court recommends that the Second Motion to Dismiss be denied with respect to Count 3 of the Amended Complaint.

### 2. Count 9: CSA Payments (Fraudulent Transfer/Revocatory Action)

In Count 9 of the Second Amended Complaint, the Trustee reasserts his fraudulent transfer claims with respect to payments made by Gulf Fleet Holdings under the CSA. Specifically, the Trustee alleges that Gulf Fleet Holdings paid almost $2 million to H.I.G. Capital for quarterly fees and expense reimbursements under the CSA from May 2007 through June 2010. The court dismissed this claim in Gulf Fleet I on the grounds that these transfers reflected payments on an antecedent debt – i.e. the contractual obligation under the CSA. Courts have generally held that a transfer made to satisfy an antecedent debt is not, as a matter of law, a fraudulent transfer. See In re Southeast Waffles, LLC, 702 F.2d 850 (6th Cir. 2012); In re Sharp Intern. Corp., 403 F.3d 43 (2nd Cir. 2005). The Amended Complaint, however, asserts new allegations that the

-26-

payments to H.I.G. Capital were made from accounts that included the property of Gulf Fleet Holdings' subsidiaries, and that these subsidiaries were not parties to the CSA. The Trustee alleges that only one Gulf Fleet entity – GOMS – was a party to this agreement. As a result, according to the Trustee, the transfer of the subsidiaries' property was not made to satisfy an antecedent debt of Gulf Fleet Holdings or its other subsidiaries. (Am. Compl. at ¶¶ 63-66).

In order to ultimately prevail on this claim, the Trustee will have to establish the ownership of the funds transferred and that Gulf Fleet Holdings and its subsidiaries did not receive reasonably equivalent value. Indirect benefits to subsidiaries that are members of a corporate group may well supply the reasonably equivalent value necessary to overcome a fraudulent transfer claim. Moreover, the Moving Defendants contend that the Trustee will not be able to establish the ownership of funds in a commingled operating account managed by Gulf Fleet Holdings. However, whether or not the Trustee can establish these elements of his claim is a question for summary judgment or a trial on the merits, not a Rule 12(b)(6) motion. For purposes of a Rule 12(b)(6) motion, allegations that the property of the Gulf Fleet subsidiaries other than GOMS was used to pay GOMS' obligations under the CSA is sufficient to plead a fraudulent transfer or revocatory action

-27-

claim.  See, e.g., In re TOUSA, Inc., 422 B.R. 783 (Bankr. S.D.
Fla. 2009) (liens granted by subsidiaries to settle litigation
involving parent or fraudulent transfers on the grounds of, *inter
alia*, the subsidiaries were not liable on any of the settled claims
and received no reasonably equivalent value in exchange for
granting the liens). Accordingly, the court recommends that the
Second Motion to Dismiss be denied with respect to Count 9 of the
Amended Complaint.

### 3.  Count 10:  CSA Payments (Preference)

The Amended Complaint also adds a preferential transfer claim
under 11 U.S.C. § 547(b) based on the CSA payments made after
July 31, 2009 totaling $127,000.  Section 547(b) provides that a
trustee may avoid any transfer of an interest of the debtor in
property:

    (1)  to or for the benefit of a creditor;

    (2)  for or an account of an antecedent debt owed
         by the debtor before such transfer was made;

    (3)  made while the debtor was insolvent;

    (4)  made—

         (A)  on or within 90 days before the date
              of the filing of the petition; or

         (B)  between ninety days and one year
              before the date of the filing of the
              petition, if such creditor at the
              time of such transfer was an
              insider; and

-28-

        (5)  that  enables  such  creditor  to  receive  more
             than  such  creditor  would  receive  if-

        (A)  the  case  were  a  case  under  chapter  7
             of  this  title;

        (B)  the  transfer  had  not  been  made;  and

        (C)  such  creditor  received  payment  of
             such  debt  to  the  extent  provided  by
             the  provisions  of  this  title.

11 U.S.C. § 547(b).

    The  Trustee's  allegations  cover  each  of  the  elements  of  a
preference  claim  under  section  547(b).   Specifically,  the  Trustee
alleges  that  the  payments  were  made  on  account  of  an  antecedent
debt  (GOMS'  contractual  obligation  under  the  CSA),  that  the
payments  were  made  to  an  insider  within  one  year  of  the  bankruptcy
filing,  and  as  a  result  of  the  payments,  that  H.I.G.  Capital
received  more  than  what  it  would  have  received  in  a  Chapter  7
liquidation.   These  allegations  are  sufficiently  pled  under  Rule  8
of  the  Federal  Rules  of  Civil  Procedure.   Accordingly,  the  court
recommends  that  the  Second  Motion  to  Dismiss  be  denied  with  respect
to  Count  10.

        **4.   Count 11:  Fraudulent Transfer/Revocatory**
             **Claim Based on $2.9 Million and $5.5 Million**
             **GF Financing Notes**

    In  Count  11  of  the  Amended  Complaint,  the  Trustee  asserts  a
fraudulent  transfer  and  Louisiana  revocatory  action  claims  against
the  H.I.G.  Defendants  and  D&O  Defendants  based  on  the  $2.9  million

                              -29-

and $5.5 million GF Financing notes.   In <u>Gulf Fleet I</u>, the court concluded that the allegations pertaining to the $2.9 million GF Financing note were sufficient to state a plausible fraudulent transfer or revocatory action claim.   (<u>Gulf Fleet I</u> at 38-39). Accordingly, the court recommends that the motion to dismiss be denied with respect to Count 11 to the extent that it is based on the $2.9 million GF Financing note.

The allegations in Count 11 pertaining to the $5.5 million GF Financing Note as a fraudulent transfer present a different case. The Trustee contends that the $5.5 million GF Financing note increased the insolvency of Gulf Fleeting Holdings' subsidiaries because they were co-makers of the note, yet these subsidiaries allegedly received no value from the transaction.  (Am. Compl. at ¶ 172).  The Trustee's allegation that Gulf Fleet's subsidiaries did not receive reasonably equivalent value is contradicted by other allegations in the Amended Complaint that the funds from this note were used to pay trade creditors who were threatening seizure of vessels and other property held by these same subsidiaries. (Am. Compl. at ¶ 109).  Indeed, the Trustee's allegation that Gulf Fleet Holdings "was a holding company that never owned any company assets" and that its subsidiaries "owned the true corporate assets" suggests that Gulf Fleet's subsidiaries reaped the full benefit of the $5.5 million cash infusion.  (Am. Compl. at ¶ 52).    In light

-30-

of these allegations, Trustee cannot state a plausible fraudulent transfer claim based on the $5.5 million GF Financing note. Accordingly, the court recommends that the Second Motion to Dismiss be granted with respect to the Trustee's fraudulent transfer and revocatory action claims in Count 11 to the extent that they are based on the $5.5 million GF Financing note.

**C. Fiduciary Duty Claims**

The court addressed choice of law for the Trustee's fiduciary duty claims in Gulf Fleet I. (Gulf Fleet I at 49-51) The court concluded that "the law of the place where the corporation was incorporated governs disputes regarding the relationship between the officers, directors, and shareholders and the officers' and directors' fiduciary duties." Torch Liquidating Trust Exrel. Bridge Associates, LLC v. Stockstill, 561 F.3d 377, 385 (5th Cir. 2009). Accordingly, Delaware law applies to the claims involving Gulf Fleet Holdings, which was a Delaware corporation, and the claims involving the Gulf Fleet subsidiaries that were Delaware limited liability companies: Gulf Fleet Services, LLC, and Gulf Wind, LLC. In contrast, the court concluded that Louisiana law would apply to the breach of fiduciary duty claims of those entities that were Louisiana limited liability companies. However, given that many of the Trustee's allegations pertain to Gulf Fleet Holdings, the court applied Delaware law to the Trustee's claims

-31-

except where any claim related specifically to a Louisiana entity and the applicable Louisiana law differed from Delaware law.

Under Delaware law, the directors of a Delaware corporation owe fiduciary duties of loyalty and care to the corporation.  See Mills Acq. Co. v. MacMillan, Inc., 559 A.2d 1261, 1280 (Del. 1989). These duties require that directors exercise their authority on an informed basis and in the good faith pursuit of maximizing the value of the corporation for the benefit of its stockholders.  Ebay Domestic Holdings, Inc. v. Newmark, 16 A.3d 1, 35 (Del. Ch. 2010). A controlling stockholder may owe fiduciary duties to the corporation that it controls as well as any minority, non-controlling stockholders.  See Weinberger v. UOP, Inc., 457 A.2d 701, 709-10 (Del. 1983); Kahn v. Lynch Communication Systems, Inc., 638 A.2d 1110, 1113-15 (Del. 1994); Cinerama, Inc. v. Technicolor, Inc., 1991 WL 111134,  * 19 (Del. Ch. 1991) ("When a shareholder, who achieves power through the ownership of stock, exercises that power by directing the actions of the corporation, he assumes the duties of care and loyalty of a director of a corporation.").  With respect to a solvent corporation, a controlling stockholder or director does not typically owe fiduciary duties to the corporation's creditors. For example, a parent company can operate its wholly-owned solvent subsidiary in way that solely benefits the parent, even at the expense of the subsidiary's creditors without

-32-

violating any fiduciary duties.  Similarly, the directors and officers of a wholly-owned solvent subsidiary operate the subsidiary for the benefit of the parent, not the subsidiary's creditors.  A creditor's rights, in this instance, are determined solely by contract.  See <u>Trenwick America Litigation Trust v. Ernst & Young, LLP</u>, 906 A.2d 168, 195 n. 75 (Del. Ch. 2006)  When a corporation is insolvent, however, the fiduciary duties owed to the corporation reorientate toward creditors.  In insolvency, these duties are to be exercised for the benefit of that corporation's creditors "because the creditors are now the residual claimants" of the corporation.  <u>Id</u>.  Allegations of insolvency, therefore, can support a fiduciary duty claim based on actions that allegedly harm corporate creditors when the corporation is insolvent even though the actions may have benefitted the corporation's owner.  However, even in insolvency, fiduciary duties are not owed directly to creditors.  <u>North American Catholic Edu. Programming Foundation, Inc. v. Gheewalla</u>, 930 A. 2d 92 (Del. 2007).  Rather, the duty is owed to the corporation and requires directors and officers to maximize the value of the corporation for the benefit of creditors.  <u>Id</u>.

The court granted the Moving Defendants' First Motion to Dismiss with respect to the Trustee's breach of fiduciary duty claims.  (<u>Gulf Fleet I</u> at 53-59).  The Court held that the

-33-

allegations against Zanarini, Tamer, and Fox were insufficient because, for the most part, the claims against them were pled collectively without any specific allegations of wrongdoing by each defendant. (Id. at 54-55) (citing In re Farmland Industries, Inc., 335 B.R. 398, 410 (Bank. W.D. Mo. 2005)).  The court also held that the allegations against these individual defendants were inadequate because the Trustee had failed to plead the basis of a fiduciary relationship between these defendants and each of the Gulf Fleet subsidiaries that the Trustee alleged was harmed by the defendants' actions.  With respect to H.I.G. Capital and its affiliates, the court held that the Trustee improperly grouped H.I.G. Capital and its related subsidiaries and affiliates for purposes of pleading his fiduciary duty claims.  The court also concluded that the Trustee's allegations that these defendants' fiduciary duties shifted to creditors when Gulf Fleet entered the "vicinity or zone of insolvency" were inconsistent with Delaware law.  (Gulf Fleet I at 56-60).  The Amended Complaint re-asserts these claims as eight separate counts that, except for Count 14, focus on specific transactions and separate the allegations against the H.I.G. Defendants and the D&O Defendants by count.

### 1.  Counts 4 and 5:  Fiduciary Duty Claims Pertaining to the *M/V Gulf Tiger*

The Trustee asserts a separate fiduciary duty claim based on

-34-

the defendants' conduct pertaining the *M/V Gulf Tiger*.  Count 4 asserts claims against Zanarini, Tamer, and Fox.  Count 5 asserts the same allegations against H.I.G. Capital and various H.I.G. Capital affiliates.  The crux of these claims is the assignment of Gulf Fleet's rights in the *M/V Gulf Tiger* construction contract to an H.I.G. subsidiary, GF Tiger Acquisition.  The Trustee alleges that Zanarini and Fox instructed Gulf Fleet's CFO to continue paying for the construction costs of the vessel even though Gulf Fleet no longer had an ownership interest in the vessel.  According to the Trustee, these actions benefitted H.I.G. Capital and its GF Tiger Acquisition at the expense of Gulf Fleet Holdings and its creditors.  (Am. Compl. at ¶¶ 150-153).  The court concludes that these allegations are sufficient to survive dismissal under Rule 12(b)(6).  The Trustee's allegations detail the roles of all three defendants with respect to the *M/V Gulf Tiger* assignment and Gulf Fleet's continued funding of the vessel's construction costs. (Id. at ¶¶ 90-96).  Moreover, unlike the Complaint, the Amended Complaint specifically details Zanarini's, Tamer's, and Fox's positions in each Gulf Fleet Holdings subsidiary. (Id. 54).  These allegations are sufficient to support the existence of a fiduciary duty between these defendants and each of the Gulf Fleet subsidiaries.  With respect to the separate claim against H.I.G. Capital and its affiliates, the court similarly concludes that

-35-

these allegations are sufficient to withstand dismissal.  The
Amended Complaint also omits any allegations of duties arising from
the Gulf Fleet entities' entry into "the zone or vicinity of
insolvency."  Accordingly, the court recommends that the Second
Motion to Dismiss be denied with respect to Counts 4 and 5 of the
Amended Complaint.

### 2.   Count 6:  Fiduciary Duty Claims Pertaining to the Funds Used for Gulf Fleet Holdings Projects

In Count 6 of the Amended Complaint, the Trustee asserts a
breach of fiduciary duty claim against Zanarini, Fox, and Tamer on
behalf of Gulf Fleet Holdings' subsidiaries.  The Trustee alleges
that these defendants allowed Gulf Fleet Holdings to "funnel" cash
from its subsidiaries to pay for various "GFH Projects" such as the
construction of the *M/V Master Everett, Gulf Quest, Gulf Fury,* and
*Gulf Storm*.  (Am. Compl. at ¶ 155.  While the Amended Complaint
adequately pleads the grounds for the fiduciary relationship
between the D&O Defendants and Gulf Fleet Holdings' subsidiaries,
these allegations do not support the Trustee's claim that these
defendants breached their duties based on the conduct alleged in
Count 6.  Specifically, the Trustee's own allegations establish
that Gulf Fleet Holdings was merely "a holding company that never
owned any company assets" and that Gulf Fleet Holdings'
subsidiaries "owned the true corporate assets."  (Id. at ¶ 52).

-36-

Thus, to the extent that income generated by Gulf Fleet Holdings'
subsidiaries was used in the construction or purchase of new
vessels, these expenditures directly benefitted those subsidiaries.
This is not a case like the *M/V Gulf Tiger*, where the Trustee
alleges that Gulf Fleet's funds and property were used to benefit
the construction of a vessel owned by a subsidiary of H.I.G.
Capital.  Indeed, the allegations in Count 6 likely reflect the
normal operation of any corporate group with a holding company, a
centralized cash management system, and individual operating
subsidiaries that are governed as units of the overall group.
Nothing in the Amended Complaint supports a plausible claim that
the use of cash or other property of the Gulf Fleet Holdings'
subsidiaries for the types of "GFH Projects" detailed in the
complaint rises above the normal operation of a corporate group to
amount to a breach of the duty of loyalty, a breach of the
defendants' duty of care, or a breach of the defendants' duty of
good faith.  Accordingly, the court recommends that the Second
Motion to Dismiss be granted with respect to Count 6 of the Amended
Complaint.

### 3.  Counts 7 and 8:  Fiduciary Duty Claims Pertaining to the *M/V Sun* Notes

In Counts 7 and 8 of the Amended Complaint, the Trustee
asserts breach of fiduciary duty claims against the D&O Defendants

-37-

and the H.I.G. Capital Defendants based on interest paid on the $4 million loan to finance the construction of the *M/V Gulf Sun* (referred to in the amended complaint as the "Sun Loans"). According to the Trustee, the transactions were made with insiders and were approved without adequate negotiation or evaluation by directors beholden to H.I.G. Capital. (Am. Compl. at ¶ 77). The Trustee further alleges that the terms of the loan were unfair and resulted in $197,000 in interest paid to H.I.G. Capital. (Id. at ¶ 78). The Trustee also alleges that Gulf Fleet Holdings' subsidiaries were co-makers of these loans but received no benefit from the loans. Considering the allegations as a whole, the court concludes that these allegations are sufficient to state fiduciary duty claims. The allegation that Gulf Fleet Holdings' subsidiaries did not benefit from the funding of a vessel owned by one of the members of the Gulf Fleet corporate group would not, standing alone, be sufficient to state a fiduciary duty claim for the same reasons discussed with respect to Count 6 of the Amended Complaint. However, the Trustee's allegations that the D&O Defendants failed to conduct a reasonable assessment of the transaction and that the terms of the loan were unfair are sufficient to survive dismissal. See Fedders, 405 B.R. at 542 (allegations that "directors approved the transaction with [the debtor's lenders] even though some due diligence which is typically conducted by a borrower in the

-38-

position of [the debtor] was not undertaken" is sufficient to support a claim for breach of fiduciary duty by the debtor's directors).

### 4.   Counts 12 and 13:  Fiduciary Duty Claims Pertaining to the $2.9 Million and $5.5 Million Notes

Counts 12 and 13 of the Amended Complaint assert fiduciary duty claims arising from the $2.9 million loan from GF Financing that replaced the Factoring Agreement and the $5.5 million GF Financing note made in January 2010 to address Gulf Fleet Holdings' cash flow problems.  According to the Trustee, the defendants did not independently negotiate or evaluate the terms or fairness of these notes.  (Am. Compl. at ¶¶ 111-112).  The court concludes that these allegations are sufficient to state a fiduciary duty claim based on these notes.  See Fedders, 405 B.R. at 542.  Accordingly, the court recommends that the Second Motion to Dismiss be denied with respect to Counts 12 and 13 of the Amended Complaint.

### 5.   Count 14:  General Fiduciary Duty Claims Against Zanarini, Fox, and Tamer

Finally, Count 14 of the Amended Complaint asserts fiduciary duty claims against Zanarini, Fox and Tamer based on their actions with respect to the $4 million *M/V Gulf Sun* loan, the Factoring Agreement, alleged improper accounting practices involving Gulf Fleet Holdings, and transactions between Gulf Fleet Holdings and

-39-

its subsidiaries.  The court concludes that the allegations of the Amended Complaint, taken as true, state a claim for relief under Count 14.  The Amended Complaint adequately pleads the insolvency of Gulf Fleet Holdings' subsidiaries and the basis for a fiduciary duty between the D&O Defendants and Gulf Fleet Holdings' subsidiaries.  Accordingly, the court recommends that the Second Motion to Dismiss be denied with respect to Count 14 of the Amended Complaint.

### D.  Count 15:  Aiding and Abetting Breach of Fiduciary Duty

Count 15 of the Amended Complaint asserts aiding and abetting breach of fiduciary duty claims with respect to any of the H.I.G.-affiliated entities that may not have owed a fiduciary duty to Gulf Fleet Holdings or any of Gulf Fleet Holdings' subsidiaries.  In Gulf Fleet I, the court had dismissed these claims on the grounds that the Trustee had not adequately pled his breach of fiduciary duty claims as a predicate for an aiding and abetting claim.  The Amended Complaint now adequately pleads the Trustee's fiduciary duty claims except as set forth above.  The court, therefore, recommends that the Second Motion to Dismiss be denied with respect to Count 15 of the Amended Complaint.

### E.  Count 16:  Equitable Subordination

In Gulf Fleet I, the court ruled that the allegations supporting the Trustee's equitable subordination claim satisfied

-40-

the notice pleading requirements of Rule 8 and, therefore, denied the First Motion to Dismiss with respect to this claim. (<u>Gulf Fleet I</u> at 48). For the same reasons, the court concludes that the allegations supporting this claim in the Amended Complaint are sufficient to survive dismissal. Accordingly, the court recommends that the motion to dismiss be denied with respect to Count 16.

**F.  Count 17:  Simulation**

In Count 17 of the Amended Complaint, the Trustee asserts a claim that the $2.9 million and the $5.5 million GF Financing notes were simulations under Louisiana Civil Code Art. 2027 because they were intended to be equity infusions. (Am. Compl. at ¶¶ 195-200). In <u>Gulf Fleet I</u>, the court dismissed the Trustee's simulation claim on the grounds that his allegations did not satisfy all of the necessary elements of a simulation claim under Louisiana law. (<u>Gulf Fleet I</u> at 39-46). Under Louisiana law, a "simulation" is a contract which "by mutual agreement...does not express the true intent of the parties" La. Civ. Code Art. 2025. Here, the Trustee appears to be arguing that these GF Financing notes were "relative simulations." A relative simulation occurs when the intended effects of the contract differ from the terms expressed in the contract. <u>Id</u>.; <u>Bennett v. Porter</u>, 58 So. 3d 663, 671 (La. App. 3rd Cir. 2011). A relative simulation under Louisiana law thus requires proof of the parties' *mutual* intent that the intended

-41-

effects of the contract differ from the express terms of the contract.  In Gulf Fleet I, the court concluded that the Trustee had pled no facts showing that the mutual intent of GF Financing and Gulf Fleet was to treat the GF Financing notes as equity.  The Trustee attempts to cure this defect in the Amended Complaint by alleging that Zanarini prepared a "draft letter" to Michael Hillman which, according to the Trustee, stated that the GF Financing notes "would almost certainly not be repaid."  (Am. Compl. at ¶ 197).  These additional allegations do not cure the core problem with the Trustee's simulation claim.  A draft letter to Michael Hillman does not adequately plead mutual intent between the contracting parties:  Gulf Fleet Holdings and GF Financing. Moreover, these allegations do not overcome the fact that the GF Financing notes expressly address the grounds under which the notes can be converted into equity.  As the court explained in Gulf Fleet I, this express contractual provision in the GF Financing notes establishes that GF Financing intended to be treated as a creditor absent an affirmative act to convert the notes to equity.  This contractual language thus negates an essential element of the Trustee's simulation claim under Louisiana Civil Code Articles 2025-2027.  (Gulf Fleet I at 45).  Accordingly, the court recommends that the Second Motion to Dismiss be granted with respect to Count 17.

-42-

### G.   Counts 18 and 19:   Unjust Enrichment and Quantum Meruit

In Counts 18 and 19 of the Amended Complaint, the Trustee challenges the $1 million in equipment, materials, and labor provided to Thoma-Sea for the *M/V Gulf Tiger* under the doctrine of quantum meruit and unjust enrichment.  With respect to unjust enrichment under Louisiana law, the Trustee must plead and prove that (1) the defendant was enriched, (2) there was an absence of justification, and (3) there is an absence of a remedy at law.  See La. Civ. Code art. 2298.  This doctrine, however, generally does not apply to cases where a contract governs the parties' relationship because the contract provides a legal remedy for the parties.  See, e.g., T. L. James & Co. v. Traylor Bros., 294 F. 3d 743, 747 (5th Cir. 2002) (plaintiff could not satisfy the fifth element of an unjust enrichment claim – that there is no remedy at law – because the contract provided a legal remedy) (citing Morphy, Makofsky & Masson, Inc. v. Canal Place 2000, 538 So. 2d 569, 575 (La. 1989)).  With respect to quantum meruit, Louisiana courts have recognized that these claims are equitable remedies based on former LSA-C.C. article 1965, which provided that "no one ought to enrich himself at the expense of another," and on LSA-C.C. articles 2292-2294, relating to quasi-contracts.  Sam Staub Enterprises, Inc. v. Chapital, 88 So. 3d 690, 695 (La. App. 4th Cir. 2012) (citing Coastal Timbers, Inc. v. Regard, 483 So. 2d 1110, 1113 (La. App.

-43-

3rd Cir. 1986)).   As with an unjust enrichment claim, a quantum meruit claim is inapplicable where there is a contract between the parties.

In _Gulf Fleet I_, the court dismissed the Trustee's quantum meruit and unjust enrichment claims to the extent that they were based on the payments made under CSA and the PSA.   The court held that these equitable doctrines do not apply where, as in the case of the PSA and CSA payments, the parties' relationship is governed by contract.   Counts 18 and 19 of the Amended Complaint eliminate the allegations pertaining to the CSA and PSA, and ground the Trustee's quantum meruit and unjust enrichment claims on the _M/V Gulf Tiger_ payments.   The court has already ruled that these allegations are sufficient to state claims for quantum meruit and unjust enrichment.   (_Gulf Fleet I_ at 65-66). Accordingly, the court recommends that the motion to dismiss be denied with respect to Counts 18 and 19 of the Amended Complaint.

### H.   Counts 20 and 21:  Direct Claim Against The Insurer and Claim for Attorneys Fees

These claims are primarily derivative of the substantive claims asserted in the Amended Complaint.   The allegations supporting these counts are sufficient to provide fair notice of the Trustee's claims.   Accordingly, the court recommends that the Second Motion to Dismiss be denied with respect to Counts 20 and 21 of the Amended Complaint.

-44-

### 1.  Reserved Claims

In <u>Gulf Fleet I</u>, the court dismissed the Trustee's alter ego/single business enterprise claims as well as his fraudulent transfer claims based on Delaware law.  The court granted the Trustee leave to replead.  The Amended Complaint includes these claims in paragraphs 217 through 219 as claims reserved for appeal, but does not include the claims in any of the counts. The court recommends that the Second Motion to Dismiss be granted with respect to these claims reserved for appeal.

### III.  Leave to Replead

The Trustee has had two opportunities to amend his complaint. The court recommends that any further leave to amend be denied.

### CONCLUSION

For the reasons stated herein, the bankruptcy court respectfully recommends disposition of the Second Motion to Dismiss as follows:

    1)  **Counts 1 and 2:**  that the Motion be **GRANTED**;

    2)  **Count 3:**  that the Motion be **DENIED;**

    3)  **Counts 4 and 5:**  that the Motion be **DENIED**;

    4)  **Count 6:**  that the Motion be **GRANTED**;

    5)  **Counts 7 and 8:**  that the Motion be **DENIED**;

    6)  **Count 9:**  that the Motion be **DENIED**;

    7)  **Count 10:**  that the Motion be **DENIED**;

-45-

8)  **Count 11:**  that the Motion be **GRANTED** with respect to the claim based on the $5.5 million GF Financing note, and **DENIED** with respect to the claim based on the $2.9 million GF Financing note;

9)  **Counts 12 and 13:**  that the Motion be **DENIED**;

10)  **Count 14:**  that the Motion be **DENIED**;

11)  **Count 15:**  that the Motion be **DENIED**;

12)  **Count 16:**  that the Motion be **DENIED**;

13)  **Count 17:**  that the Motion be **GRANTED**;

14)  **Counts 18 and 19:**  that the Motion be **DENIED;**

15)  **Counts 20 and 21:**  that the Motion be **DENIED.**

### ###

-46-

# Notice Recipients

District/Off: 0536–4       User: kcarpente       Date Created: 4/2/2014
Case: 11–05006       Form ID: pdf6       Total: 46

**Recipients submitted to the BNC (Bankruptcy Noticing Center) without an address:**

| | |
|---|---|
| pla | Michael A. Hillman |
| pla | Darlene M. Hillman |
| dft | Douglas Berman |
| dft | Jeff Zanarini |
| dft | Jonathan Fox |
| dft | Tony Tamer |
| dft | Michael Prejean |
| dft | Richard Currence, Jr. |
| ip | Alan Goodman, Trustee of the Gulf Fleet Liquidating Trust |
| dft | Steadfast Insurance Company |
| dft | Gulf Fleet Financing, LLC |
| dft | Gulf Fleet Tiger Acquisition, LLC |
| dft | Gulf Fleet Tiger Holdings, Inc. |
| dft | HIG Advisors, IV, LLC |
| dft | HIG Capital Partners, IV, LP |
| dft | HIG GP–II, LLC |
| dft | HIG Gulf Fleet Acquisition |
| pla | DMH Enterprises, LLC |
| pla | DMH Leasing 2, LLC |
| pla | DMH Leasing 1, LLC |
| pla | Hillman Investment Management, LLC |
| pla | Hillman Enterprises, LLC |
| pla | Hillman Marine Services, LLC |
| pla | MAH Enterprises LLC |
| pla | Ocean Aviation, LLC |
| pla | Bengal Aviation Management Service, LLC |
| pla | Bengal Rental Services, LLC |
| pla | Bengal Barges, LLC |
| pla | Grant Hillman |

TOTAL: 29

**Recipients of Notice of Electronic Filing:**

| | | |
|---|---|---|
| aty | Brandon W. Letulier | bletulier@ln–law.com |
| aty | Brandon W. Letulier | bletulier@ln–law.com |
| aty | Christopher D. Johnson | cjohnson@mckoolsmith.com |
| aty | Frank X. Neuner, Jr. | Frank@ln–law.com |
| aty | Frank X. Neuner, Jr. | Frank@ln–law.com |
| aty | Hugh Massey Ray, III | hmray@mckoolsmith.com |
| aty | Jed Michel Mestayer | jedm@ln–law.com |
| aty | Louis M. Phillips | lphillips@gordonarata.com |
| aty | Melissa Lutgring Theriot | mtheriot@ln–law.com |
| aty | Peter S. Koeppel | psk@koeppeltraylor.com |
| aty | Ryan James Richmond | pbartholomew@gordonarata.com |
| aty | Timothy S. Madden | tmadden@kingkrebs.com |

TOTAL: 12

**Recipients submitted to the BNC (Bankruptcy Noticing Center):**

| | | |
|---|---|---|
| dft | H.I.G. Capital, LLC    Laborde & Neuner    RETURNED MAIL – UNDELIVERABLE    99999 | | |
| dft | Brightpoint Capital Partners Master Fund, L.P.    c/o Steven J. Solomon, Esq.    Gray Robinson, P.A.    1221 Brickell Avenue    Ste. 1600    Miami, Fl 33131 | | |
| aty | Andrew L. Margulis    Ropers Majeski Kohn and Bentley, LLC    750 Third Avenue, 25th Floor    New York, NY 10017 | | |
| aty | Jason N. Zakia    Southwest Financial Center Ste 4900    200 South Biscayne Blvd    Miami, FL 33131–2352 | | |
| ust | Office of U. S. Trustee    300 Fannin St., Suite 3196    Shreveport, LA 71101 | | |

TOTAL: 5